[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11054
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-01847-SCJ


CM SOUTH EAST TEXAS HOUSTON, LLC,
SOUTH EAST TEXAS KCH CO., LLC,

Plaintiffs-Counter Defendants-
Appellees,

versus

CAREMINDERS HOME CARE, INC.,

Defendant-Counter Claimant-
Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 7, 2016)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

CareMinders Home Care, Inc. appeals the district court's confirmation of an arbitration award in favor of plaintiffs CM South East Texas Houston, LLC and South East Texas KCH Co., LLC.  CareMinders contends that the district court should have vacated the award under the Federal Arbitration Act (FAA), 9 U.S.C. § 10(a)(3), because the arbitrator engaged in misconduct by failing to postpone a hearing when both sides had agreed to postpone it.  The plaintiffs contend that CareMinders' appeal is not only wrong, but also frivolous, and they have moved for sanctions on that ground.

**I.**

This case arose out of a contract dispute.  The plaintiffs asserted claims against CareMinders for breach of contract, and they demanded to arbitrate those claims as required by their contracts.  After months of initial proceedings, the arbitrator scheduled a final five-day evidentiary hearing for December 8–12, 2014, in Atlanta.  When a scheduling conflict arose, both sides requested a new date, and the arbitrator rescheduled the hearing for February 9–13, 2015.  When yet another scheduling conflict arose, both sides again requested a new date, and the arbitrator again rescheduled the hearing, this time for March 9–13, 2015.  What happened next is the main source of the parties' dispute on appeal.

On Friday, February 27, 2015, CareMinders' attorney sent an email to the arbitrator, advising him that one of the company's key witnesses, Gary Kneller,

2

was in the midst of a family emergency.  The attorney explained that Kneller's mother, who lived in Chicago, "had been battling serious health issues the past few weeks," and that Kneller had "been flying between Chicago and Atlanta to split time caring for his mother" while also preparing for the hearing.  That morning, Kneller's mother had suffered a second stroke that would require surgery and her doctors had scheduled the surgery for the same week as the final hearing in March.  CareMinders' attorney explained that because "there are no other family members who can be with his mother that week," Kneller "must be in Chicago to care for her during that time."  As a result, CareMinders asked the arbitrator to immediately postpone the hearing and to inform the parties of his availability during the period of May to September so that they could reschedule.  CareMinders also noted that the plaintiffs had "agreed this hearing should be rescheduled so that Mr. Kneller can attend to his mother."

The arbitrator responded to CareMinders' email on the same day and set a conference call for Monday, March 2, 2015, to discuss rescheduling the hearing.  The arbitrator also stated that he was "not yet agreeing to reschedule," and that he wanted to discuss "whether there is a way not to postpone, notwithstanding Mr. Kneller's family situation."  He explained that while he was "certainly sympathetic to Mr. Kneller's situation," he was "also concerned that this case has already been

3

rescheduled twice before, and now may not be heard for 6 months beyond the originally scheduled hearing dates."

The conference call took place as scheduled on March 2.  During the call, Kneller "explained the grave and ongoing nature of his mother's condition, that there were no other friends or family available in Chicago to care for his mother, and that he was a critical witness for CareMinders and needed to attend the hearing in person."  CareMinders' attorney also advised the arbitrator "that postponing the hearing only a few days would be insufficient, since it was likely that Mr. Kneller and his mother would be in the same circumstances for at least the next several days."  The arbitrator asked whether it would be possible for Kneller to attend the hearing remotely, by telephone or video conference, but CareMinders' attorney claimed that option was not feasible.  According to CareMinders' attorney, the arbitrator "remained firm that the hearing must take place in the month of March" and "directed the parties to agree on alternative dates in March or to otherwise be prepared to attend the hearing as scheduled on March 9."

The parties conferred by email and sent proposed dates to the arbitrator. Based on the dates the parties provided, the arbitrator rescheduled the hearing for March 18–21, 2015, reducing it from five days to four days.  In his revised scheduling order, the arbitrator explained that he had changed the dates of the hearing "due to a family health emergency for Mr. Kneller."

4

The final hearing took place as re-re-rescheduled.  Kneller attended all four days of the hearing and testified at length. Five days after the hearing ended, Kneller's mother passed away.

The arbitrator issued a standard award, without a written explanation, finding in favor of the plaintiffs and awarding damages.  After that, the plaintiffs filed a motion to confirm the award in federal court.  CareMinders responded by filing a motion to vacate the award under the FAA, contending that the arbitrator engaged in misconduct by refusing to postpone the hearing when both parties had agreed to it.  In support of its motion, CareMinders submitted an affidavit by Kneller in which he stated that "[d]uring the arbitration, [he] was making and receiving phone calls from the hospital in Chicago, getting updates on [his] mother's condition and making decisions about life support."  He maintained that those circumstances rendered him "ill-prepared for the arbitration" and that, as a result, he did not present "[s]ome evidence and material information" at the hearing and that the evidence he did present "was not presented in the same way or in the same order that it would have been, had [he] been able to mentally and physically present and focused in the days leading up to the arbitration."

The district court denied the motion to vacate, finding that CareMinders had failed to show that the arbitrator's refusal to postpone the hearing amounted to misconduct or that it sufficiently prejudiced the company's ability to mount a

5

defense.  The court later issued an order confirming the award, which CareMinders appeals here.  We review the district court's factual findings for clear error and its legal conclusions de novo.  Gianelli Money Purchase Plan & Trust v. ADM Investor Servs., Inc., 146 F.3d 1309, 1311 (11th Cir. 1998).

## II.

The FAA permits a court to vacate an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown."  9 U.S.C. § 10(a)(3).  To establish misconduct, the party moving for vacatur must show that there was no reasonable basis for the arbitrator's refusal to postpone the hearing.  See Johnson v. Directory Assistants, Inc., 797 F.3d 1294, 1301 (11th Cir. 2015).  In deciding whether there was any reasonable basis for an arbitrator's decision to refuse a request for a postponement, we are mindful of federal policy favoring the "expeditious handling" of arbitration cases, and also that a rescheduled hearing would have to not only "meet the convenience of both parties and their witnesses," but the convenience of the arbitrator as well.  Schmidt v. Finberg, 942 F.2d 1571, 1574 (11th Cir. 1991).

We may vacate an award on these grounds only if the arbitrator's choice "prejudice[d] the rights of the parties and denie[d] them a fair hearing."  Robbins v. Day, 954 F.2d 679, 685 (11th Cir. 1992), disapproved on other grounds by First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S. Ct. 1920 (1995).

6

Prejudice might occur when, for example, the arbitrator's choice not to postpone a hearing entirely prevents a party from presenting a key witness' material, non-cumulative testimony. See Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20–21 (2d Cir. 1997).

CareMinders contends that the arbitrator's decision about postponing the final hearing warrants vacatur under the FAA. The arbitrator did grant a postponement, but not the one CareMinders wanted. CareMinders requested that the arbitrator postpone the hearing until sometime between May and September 2015. He instead postponed the hearing to March 18–21, 2015, to avoid the conflict with the scheduled surgery. So CareMinders' actual argument is that the arbitrator engaged in misconduct by granting a postponement that was shorter than the one it had requested.

CareMinders' argument fails. To begin with, it cannot show that there was no reasonable basis for the arbitrator's choice. See Johnson, 797 F.3d at 1301. As the district court aptly noted, the arbitrator was faced with "the unenviable predicament of trying to accommodate Kneller's unfortunate situation while also trying to ensure the expeditious resolution of the case." The arbitrator attempted to serve both of those competing interests by granting a nine-day postponement, which allowed Kneller to be in Chicago for his mother's surgery, while also ensuring that the arbitration would proceed expeditiously. CareMinders challenges

7

the accuracy of the arbitrator's statement that, if he had chosen to further postpone the hearing, the matter "now may not be heard for 6 months beyond the originally scheduled dates." But that statement is accurate enough. CareMinders itself suggested to the arbitrator that the hearing could be rescheduled to dates as late as August or September 2015, which would be well over six months past the originally scheduled dates in December 2014. We cannot say that, under those circumstances, the arbitrator's decision to grant the shorter postponement lacked any reasonable basis.

We also reject the CareMinders' contention that an arbitrator's refusal to grant a postponement when the parties have mutually agreed to one is per se unreasonable and mandates vacatur. An arbitrator is entitled to consider not only "the convenience of both parties and their witnesses," but his convenience as well. Schmidt, 942 F.2d at 1574. And he is entitled to take into consideration the need to ensure the expeditious resolution of the case. See id. A per se rule would undermine those considerations.

CareMinders has also failed to show that the arbitrator's refusal to postpone the hearing prejudiced its rights or deprived it of a fair hearing. See Robbins, 954 F.2d at 685. The arbitrator's decision did not prevent Kneller from testifying at the hearing altogether. To the contrary, he provided hours of testimony. While CareMinders baldly asserts that Kneller "could have done a much better job" had

8

he been given more time to prepare, it fails to explain how he would have done so. CareMinders contends that "[i]t is not reasonable to expect, as there is no realistic way for Mr. Kneller to prove, what he would have done differently." But CareMinders could have told us what material testimony Kneller would have provided that he did not, or what he would have said differently. It has not done so, leaving nothing but speculation that things might — just might — have been different. That simply is not enough to establish prejudice.

We have stated in other contexts that litigants generally are entitled to fair proceedings, not perfect ones. See United States v. Espinosa-Orlando, 704 F.2d 507, 514 (11th Cir. 1983) ("The Constitution mandates fair, not perfect, trials."). The same holds true for arbitration. CareMinders was entitled to a fair arbitration proceeding, not a perfect one. See Rosensweig v. Morgan Stanley & Co., Inc., 494 F.3d 1328, 1333 (11th Cir. 2007) (explaining that while parties are entitled to a "fundamentally fair hearing" in arbitration, "arbitrators are not required to follow all the niceties observed by the federal courts") (quotation marks omitted). Because CareMinders got a fair proceeding, we will not vacate the arbitrator's award.

## III.

The plaintiffs move for sanctions on the ground that CareMinders' appeal is frivolous. See Fed. R. App. P. 38 (authorizing a court of appeals to impose

9

sanctions when it "determines that an appeal is frivolous"). We have expressed our exasperation with "those who attempt to salvage arbitration losses through litigation that has no sound basis in the law applicable to arbitration awards." B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 914 (11th Cir. 2006), abrogated on other grounds by Frazier v. CitiFinancial Corp., 604 F.3d 1313 (11th Cir. 2010). We have also warned that "it may be that we can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions." Id. at 913. "A realistic threat of sanctions may discourage baseless litigation over arbitration awards and help fulfill the purposes of the pro-arbitration policy contained in the FAA." Id. at 913–14.

In this case, however, we believe sanctions are not called for. This is not a case where the arbitration loser is simply quarreling with the merits of the arbitrator's decision. See, e.g., id. at 911–13. Our review of our precedents reveals few decisions that discuss in any detail motions to vacate an award under the FAA based on an arbitrator's failure to postpone a hearing. See, e.g., Johnson, 797 F.3d at 1301; Scott v. Prudential Sec., Inc., 141 F.3d 1007, 1016–17 (11th Cir. 1998), overruled in part by Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 128 S. Ct. 1396 (2008); Robbins, 954 F.3d at 684–85. None of those decisions clearly

10

establishes that CareMinders' appeal was destined to fail.  Accordingly, we cannot say that the appeal was entirely baseless.

## IV.

The district court's order confirming the arbitration award is **AFFIRMED**. The plaintiffs' motion for sanctions is **DENIED**.